**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD LAW,** | : | Civil No. 3:13-CV-2407 |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| **CORRECTIONAL CARE, INC.,** | : | |
| **DR. EDWARD ZALOGA, and** | : | |
| **ANTHONY IANNUZZI,** | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

The plaintiff, Richard Law, brought this action against medical providers who he claims violated his rights under the United States Constitution and Pennsylvania law by badly misdiagnosing and failing adequately to treat a serious eye condition while the plaintiff was housed as an inmate at the Lackawanna County Correctional Facility ("LCCF"). In the complaint, the plaintiff has brought the following causes of action: (1) a claim alleging violations of the Eighth and Fourteenth Amendments brought under 42 U.S.C. § 1983; (2) a claim under Pennsylvania state law for professional negligence or gross negligence on the part of Dr. Edward Zaloga and Anthony Iannuzzi, and vicariously, against their employer, Correctional Care, Inc.;

and (3) a claim against Correctional Care for corporate liability for its own breaches of duty relating to allegedly inadequate, grossly negligent, and deliberately indifferent policies that permitted physicians and staff to violate inmate's rights.

The defendants have moved to dismiss the plaintiff's state law claims alleging gross negligence, punitive damages, and corporate negligence. (Doc. 7.) Essentially, the defendants maintain that accepting all facts in the complaint as true, they nevertheless do not support a claim for these kinds of tort claims under Pennsylvania law. The motion is fully briefed and ripe for disposition. For the reasons that follow, we find that the plaintiff has adequately pleaded these claims, and that the claims cannot be disposed of on a motion under Rule 12(b)(6). Accordingly, it will be recommended that the defendants' motion to dismiss be denied.

**II.    BACKGROUND**

The background to this report is taken from the well pleaded allegations in the amended complaint, filed on November 5, 2013, which are accepted as true for purposes of considering the defendants' motion to dismiss.

Inmates at the LCCF receive medical care provided by Correctional Care and its medical staff. Defendant Zaloga owns Correctional Care and is the company's highest official, although in practice Dr. Zaloga and Correctional Care operate as a single entity. (Doc. 6, Am. Compl., ¶¶ 6, 37.) Dr. Zaloga is Correctional Care's

medical director and LCCF's medical director. (Id.)  Dr. Zaloga is Anthony Iannuzzi's supervisor. (Id.)

On or around September 30, 2011, the plaintiff was incarcerated at LCCF. On March 15, 2012, the plaintiff, while housed at LCCF, submitted a sick call request in which he reported "right eye is blurrie [sic]. Hearing is bad." (Doc. 6 ¶ 10.) Four days after submitting this slip, the plaintiff was seen by Anthony Iannuzzi, a certified nurse practitioner. Iannuzzi examined the plaintiff and noted that the plaintiff had a hazy film on his right eye that had been present for approximately two weeks, but that the plaintiff had denied any trauma, foreign body, pain, headache, confusion, flu-like symptoms or coughing, and otherwise did not complain of any other symptoms. (Id. ¶ 12.) The plaintiff explained that it felt like he was looking through black soot or smoke. (Id. ¶ 13.) Iannuzzi noted that he was "unable to visualize retina" in the right eye, found the left eye positive for pappiledema, and assessed the left eye as "20/30" whereas the right eye vision was "20/100". (Id. ¶ 14.) Iannuzzi referred the plaintiff for an ophthalmology followup, and described the condition as "urgent" but not "emergent". (Id. ¶ 15.) Iannuzzi believed that the plaintiff's condition was likely caused by irregular blood pressure, and the plaintiff was accordingly placed on blood pressure medication. (Id. ¶ 16.) On March 20, 2012, Correctional Care sought to obtain the plaintiff's prior ophthalmology records, but otherwise did nothing to treat

the plaintiff's ocular condition. (Id. ¶ 16.) According to the amended complaint, prior to this incident, the plaintiff had never had medical problems with his eyes, and only wore glasses for reading and fine print. (Id. ¶¶ 17-18.)

In early April 2012, the plaintiff developed blindness in his right eye. (Id. ¶ 19.) Nevertheless, neither Iannuzzi nor Dr. Zaloga made arrangements for the plaintiff to be seen by an ophthalmologist until sometime in May 2012. Indeed, the plaintiff alleges that this outside consultation was only scheduled after the plaintiff's lawyer "intervened" and had an appointment scheduled for June 4, 2012. (Id. ¶ 20.) During the appointment, an ophthalmologist diagnosed the plaintiff with a right eye rhegmatogenous retinal detachment involving the macula, which had been present for a few months. (Id. ¶ 21.) The plaintiff was recommended for surgical repair of the scleral buckle that remained, and on June 6, 2012, the plaintiff underwent surgery to repair his detached retina in his right eye. (Id. ¶¶ 22-23.)

Although the plaintiff had surgery, he has not recovered his visual acuity in his right eye, and his vision in his right eye remains distorted. (Id. ¶ 24.) The plaintiff's right eye continues to be sensitive to light, and he now wears an eye patch over the eye. (Id.) Prior to this incident, the plaintiff possessed a commercial driver's license, which he has since allowed to expire because he cannot drive long distances. (Id.)

The plaintiff has alleged that when he saw Nurse Iannuzzi on March 19, 2012,

4

four days after complaining about vision problems, his condition should have been found to present an ophthalmologic emergency and should have been treated promptly. (Id. ¶¶ 25-28.) The plaintiff claims that the conditions he described to Iannuzzi presented "classic signs of a detached retina requiring ophthalmologic consultation as soon as possible," but instead Iannuzzi chose to send out for medical records and put the plaintiff on blood pressure medication. (Id. ¶ 29.)

During this time, Nurse Iannuzzi's supervising medical provider, Dr. Zaloga, never saw the plaintiff, did not follow up in any meaningful way regarding Mr. Law's condition, and did nothing to ensure that Mr. Law was seen by an ophthamologist for almost two months after he first complained about his eye, and nearly a month after he began experiencing blindness in the eye. (Id. ¶¶ 30-32.)

The plaintiff avers that Dr. Zaloga's and Nurse Iannuzzi's treatment of his condition reflected deliberate indifference to a serious medical need, and deviated from the professional standard of care in failing to properly evaluate the plaintiff's sudden monocular reduction in visual acuity as an ophthalmologic emergency requiring immediate consultation. (Id. ¶¶ 33-34.) Further, the plaintiff criticizes the defendants for failing to obtain an ophthalmologic appointment for him in a timely fashion so that his retina would not detach, and so the harm to his right eye might be mitigated. As a proximate result of these failures, the plaintiff claims he suffered

5

retinal detachment and permanent loss of visual acuity in his right eye.  (Id.)

### III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face, "Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 555.  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action.  Id at 556.  Furthermore, courts must determine whether, "under any reasonable reading of the complaint, the plaintiff may be entitled to relief," Eid v. Thompson, 740 F.3d 118 (3d Cir. 2014), which requires the plaintiff to plead "more than labels and conclusions or a formulaic recitation of the elements of a cause of action." W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank,

6

712 F.3d 165 (3d Cir. 2013) (quotation marks omitted) (quoting Twombly, 550 U.S. 544, 555).

In considering a motion to dismiss, the court "consider[s]... the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents," Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 772 (3d Cir. 2013). The court may also consider any "matters incorporated by reference or integral to the claim, items subject to judicial notice," Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006), "legal arguments presented in memorandums or briefs, and arguments of counsel. Pryor v. Nat'l Collegiate Athletic Ass'n., 288 F.3d 548, 560 (3d Cir. 2002). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered. Id. However, the court may not make reference to other parts of the record in determining a motion to dismiss. Angstadt v. Midd-W. Sch. Dist., 377 F.3d 338, 342 (3d Cir. 2004).

### IV. DISCUSSION

The defendants' pending motion seeks only the dismissal of the plaintiff's Pennsylvania tort claims for gross negligence and punitive damages, and also for

corporate liability on the part of Correctional Care, arguing that the amended complaint contains insufficient factual allegations to support these claims.

### A. Gross Negligence and Punitive Damages

With respect to the defendants' argument that the plaintiff has failed to plead evidence that could result in an award of punitive damages, we do not believe that this issue may be resolved on the basis of the pleadings alone. The United States Supreme Court has long held that punitive damages may be available for claims brought under 42 U.S.C. § 1983, provided that a plaintiff proves that a "defendant's conduct is . . . motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). This is a disjunctive standard, and an award of punitive damages may be had where a defendant's conduct is proven to be "at a minimum, reckless or callous. Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard." Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989).

This standard roughly dovetails with applicable Pennsylvania law regarding gross negligence and punitive damages. Pennsylvania courts generally view gross negligence as "a want of even scant care, but something less than intentional indifference to the consequences of actions." Royal Indem. Co. v. Sec. Guards, Inc.,

255 F. Supp. 2d 497, 505 (E.D. Pa. 2003) (quoting Fidelity Leasing Corp. v. Dun & Bradstreet, Inc., 494 F. Supp. 786, 790 (E.D. Pa. 1980)).  The Pennsylvania Commonwealth Court has defined gross negligence as "a failure to perform a duty in reckless disregard of the consequences or with such want of care and regard for the consequences as to justify a presumption of willfulness and wantonness."  Williams v. State Civil Serv. Comm'n, 306 A.2d 419, 422 (Pa. Commw. Ct. 1973).  In order to find gross negligence, there must, therefore, be "an extreme departure from ordinary care."  Royal Indem., 255 F. Supp. 2d at 505 (quoting Douglas W. Randall, Inc. v. AFA Protective Systems, Inc., 516 F. Supp. 1122, 1126 (E.D. Pa. 1981)).

The Pennsylvania Supreme Court has explained that in order to obtain an award of punitive damages a negligence claim must be supported by evidence that is sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed, and (2) he acted, or failed to act, in conscious disregard of that risk.  Stroud v. Abington Memorial Hosp., 546 F. Supp. 2d 238, 257 (E.D. Pa. 2008) (citing Hutchinson ex rel. Hutchinson v. Luddy, 870 A.2d 766, 771-72 (Pa. 2005)).  Accordingly, provided that the plaintiff can prove that a defendant acted with conscious disregard, he may seek an award of punitive damages for that tortious conduct.  Luddy, 870 A.2d at 772.

9

In this case, the allegations in the amended complaint adequately articulate facts that could support an award of punitive damages under state or federal law, and the allegations are sufficient to state a claim for gross negligence. The plaintiff has alleged that the defendants acted with deliberate indifference, and by failing to act appropriately in response to the plaintiff's emergent eye condition, caused the plaintiff to wait months for a consultation with an ophthalmologist and have corrective surgery for retinal detachment, thereby causing the plaintiff to suffer permanent physical damage to his eye and to lose visual acuity. Whether the facts developed through discovery in this case will support the plaintiff's claims remains to be seen, but at this early stage of the litigation we find that the amended complaint contains sufficient factual allegations to permit the claims for gross negligence and punitive damages to proceed.

### B. Corporate Negligence

Next the defendants move to dismiss the plaintiff's claims for corporate negligence against Correctional Care on the grounds that this corporate entity should not be considered to be a provider of comprehensive health-care services, and, therefore, corporate negligence is unavailable under Pennsylvania law.

In 1991, the Pennsylvania Supreme Court recognized a causes of action for corporate liability against hospitals as entities. In <u>Thompson v. Nason Hospital</u>, 591

A.2d 703 (Pa. 1991), the court explained that corporate negligence is "a doctrine under which the hospital is liable if it fails to uphold the proper standard of care owed the patient, which is to ensure the patient's safety and well-being while at the hospital." Id. at 707. The doctrine thus permits an injured party to bring a suit against a hospital directly for negligence, rather than forcing the injured party "to rely on and establish the negligence of a third party." Id. In extending the doctrine of corporate liability to hospitals, the court explained that a corporate hospital is a "comprehensive health center with responsibility for arranging and coordinating the total health care of its patients." Id. at 706. The hospital is duty-bound to (1) use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) to select and retain only competent physicians; (3) to oversee all persons who practice medicine within its walls as to patient care; and (4) to formulate, adopt and enforce adequate rules and policies to ensure equality of care for the patients. Id. at 707.

Thompson also observed that "a [hospital] staff member or employee has a duty to recognize and report abnormalities in the treatment and condition of its patients . . . If the attending physician fails to act after being informed of such abnormalities, it is then incumbent upon the hospital staff member or employee to advise the hospital authorities so that appropriate action might be taken . . . . When there is a failure to report changes in a patient's condition and/or to question a physician's

order which is not in accord with standard medical practice and the patient is injured as a result, the hospital will be liable for such negligence." Id. at 709.

The defendants suggest that Correctional Care should not be subject to potential corporate liability under Thompson because it is more in the nature of a physician's clinic, and not tantamount to a hospital that provides comprehensive health care. (Doc. 9, at 4.) The defendants' characterization of the services provided by Correctional Care is, however, entirely at odds with the allegations in the amended complaint, which state that Correctional Care had a "contract with Lackawanna County to provide complete medical care to inmates" of LCCF. (Doc. 6, Am. Compl., ¶ 5.) There may ultimately be a factual dispute over the scope of the medical services that Correctional Care contracted to provide to inmates at LCCF, and whether those services were sufficiently comprehensive to warrant exposure to a corporate negligence claim. However, the facts alleged in the amended complaint are sufficient, at this stage, to permit this claim to move forward. Furthermore, other federal courts within the Third Circuit have likewise found, or predicted, that Pennsylvania's appellate courts would extend liability to corporate providers of medical care to prison inmates. See, e.g., Giamboi v. Prison Health Servs., Inc., No. 3:11-CV-00159, 2011 WL 5322769, at *15 (M.D. Pa. June 2, 2011) ("Since they are incarcerated, inmates can not provide for their own medical care. Rather, they must

accept the care provided to them. . . . It is a reasonable inference that PHS and PHS Correctional provide comprehensive health care to inmates. Thus, PHS and PHS Correctional may be liable under a theory of corporate negligence."); Wheeler v. Prison Health Services, Inc., Civ. A. No. 09-410, 2010 WL 3489405, at *7 (E.D. Pa. Sept. 1, 2010) (predicting the Pennsylvania Supreme Court would extend corporate negligence to a company that is responsible for inmate health care); Zheng v. Palakovich, No.4:09-CV-1028, 2010 WL 1508521, at *7 (M.D. Pa. Apr. 13, 2010) (predicting that if the Pennsylvania Supreme Court were to address the issue it would hold that companies such as MHM Correctional Services, Inc., a private company providing mental health services to inmates at SCI-Smithfield, can be held liable for corporate negligence); Fox v. Horn, No. 98-5279, 2000 WL 49374, at *8 (E.D. Pa. Jan. 21, 2000) (same).

    We agree with the reasoning reflected in these decisions, and conclude that the amended complaint in this case likewise alleges sufficient facts to support a claim of corporate negligence against Correctional Care, Inc.

## IV. **CONCLUSION**

    Accordingly, for the foregoing reasons, IT IS RECOMMENDED THAT the defendants' partial motion to dismiss the amended complaint (Doc. 7.) should be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of April, 2014.

                                        */s/ Martin C. Carlson*
                                        Martin C. Carlson
                                        United States District Court